GRANITE PROPERTIES LIMITED PARTNERSHIP, Plaintiff-Appellant, v. LARRY R. MANNS *et al.*, Defendants-Appellees.

Fifth District   No. 5—84—0571

Opinion filed January 8, 1986.

562

KASSERMAN, P.J., dissenting.

Mark Glass and Charlene E. Novick, both of Carr, Korein, Kunin, Schlichter & Brennan, of East St. Louis, for appellant.

G. Edward Moorman, of East Alton, for appellees.

JUSTICE JONES delivered the opinion of the court:

The instant case involves two easements by implication claimed by the plaintiff for two separate and distinct parcels of land containing a shopping center and an apartment complex, respectively. The shopping center and the apartment complex, both owned by the plaintiff, lie on opposite sides of a third, undeveloped, parcel of land owned by the defendants. The plaintiff claims easements, first, in a driveway running alongside the shopping center on the defendants' property to the rear of the shopping center and, second, in a driveway over the defendants' property to the apartment complex from a public street.

Following a nonjury trial in the plaintiff's suit to enjoin interference by the defendants with these claimed easements, the trial court entered judgment against the plaintiff as to both claimed easements. Upon a post-trial motion by the plaintiff, the trial court vacated that portion of its judgment denying injunctive relief as to the easement for the apartment complex and ordered a permanent injunction thereon, while affirming its judgment as to the easement for the shopping center. The plaintiff has appealed from that portion of the judgment denying injunctive relief as to the shopping center easement, and the defendants have filed a cross-appeal from that portion of the judgment granting injunctive relief as to the apartment complex easement. We find that an easement exists by implication as to both properties and accordingly affirm in part and reverse in part.

The relation of the subject properties lying south of Bethalto Drive in Bethalto, Illinois, may be seen by reference to the following diagram adapted from plaintiff's exhibit No. 1:

LEGEND:

⸺ easement
--- plaintiff's buildings
▨ defendant's parcel

## THE SHOPPING CENTER

All of the subject properties were owned by the plaintiff, Granite Properties Limited Partnership, and its predecessors in title from 1963 or 1964 until 1982, when parcel B was conveyed to the defendants, Larry and Ann Manns. In 1967, a shopping center was constructed on parcel A extending from lot line to lot line across the east-west dimension of that property. Since that time the rear of the shopping center has been used for deliveries, trash storage and removal, and utilities repair for the various stores and offices located in the shopping center. To gain access to the rear of the shopping center for these purposes, trucks have used a gravel driveway on parcel B running along the lot line between parcel A and parcel B. A second driveway located on parcel D to the east of the shopping center enables the trucks to circle the shopping center without having to turn around in the space behind the stores.

Immediately to the south of parcel A are five four-family apartment buildings located on parcel C, where families with children reside. The plaintiff has no common ownership as to parcel C and has no control of the apartment complex on that property. The distance between the back of the shopping center and the property line of parcel C is 50 feet, and the shopping center's underground utility units for electricity and telephone are located in this area.

To the east of the shopping center on parcel D is a separately owned health club. Although the plaintiff has no control of this property, the owner of parcel D has allowed trucks coming into the plaintiff's shopping center to continue use of the driveway running on parcel D to the rear of the shopping center.

On the north side of the shopping center is an asphalt parking lot with approximately 191 feet of frontage on Bethalto Drive. Despite this access to the front of the property, there is no possible access to the rear of the shopping center without crossing the property line of an adjacent landowner.

At trial, Robert Meehan, owner of a Sav-a-lot grocery store located in the shopping center, testified that he receives deliveries of groceries to his store at the back of the building, where they are unloaded with a fork lift on a concrete pad poured for that purpose. Semitrailer trucks make deliveries to the rear of the store four days a week, with as many as two or three such trucks arriving daily. In all, an average of 10 to 12 trucks a day, including semis, make deliveries to the rear of the grocery store. There are big double steel doors in the back of the store to accommodate items that would not fit through the front door. Items are priced in the back of the store upon

unloading, and refrigerator and freezer storage space is in the back of the store off the selling floor.

The grocery store's trash dumpster is kept behind the store, where the trash is picked up four times a week.

Mr. Meehan testified that the drive behind the store is about 1½ trailer-widths wide and that it would be "impossible" for a semitrailer truck to turn around in the back and exit the same way it came in. Meehan stated further that front door deliveries would be "very disruptive." Pallets that wouldn't fit through the front door would have to be broken down into parts, requiring extra work, and there would not be adequate space to the front of the store to do that work during business hours.

On cross-examination Meehan stated that he had not investigated the cost of installing a front door that would be big enough for the pallets of groceries brought in by fork lift. There would not be enough space to manipulate the fork lift around in the front of the store, although it could be run between the shelves of food to the back of the store.

Darrell Layman, a limited partner with the plaintiff, testified that the shopping center had been in continuous operation since 1967 and that the pattern for deliveries had always been "around the store [*sic*] to the rear." When asked whether he had "ever seen a semi back up [in the rear of the shopping center] and go out the way it came," Layman responded, "That would be impossible." Later, on cross-examination, the following exchange took place:

"[Defendants' counsel]: Is there any reason the trucks can't use [the driveway on parcel D]?

[Layman]: Yes, they are using it now. The problem is with a tractor-trailer, they can't make the turn and go back out that way. They circle.

[Defendants' counsel]: They do anyway. You indicated there was 50 feet, and they would have to jockey quite a big to get turned around. They could do it, couldn't they?

[Layman]: I imagine.

[Defendants' counsel]: but [*sic*] they would have to jockey a few times, but they could get back out, is that right?

[Layman]: That's true."

Layman stated that he had not investigated the cost of expanding the size of the front doors of the building and that it "would seem impossible" to him to put in any kind of hallway or passageway to allow equipment to bring things into the store from the front.

On redirect examination Layman testified that the delivery trucks

follow no set schedule and, as a result, may "overlap" at times. He stated that he had seen as many as four or five delivery trucks backed up and that there was "no way" the trucks could back up and turn around when there were multiple trucks.

## THE APARTMENT COMPLEX

The apartment complex in question was constructed on parcel E in the 1960's. The complex consists of three buildings, containing a total of 36 units, with a parking lot to the rear of the buildings providing 72 parking spaces. The only access to this parking lot is by a driveway over a part of the defendants' property that separates parcel E from Rou Des Chateaux, a public street lying south of the subject properties. The driveway has been in existence since the apartment complex was constructed in the 1960's, when the plaintiff's predecessors in title purchased the apartment buildings and the vacant ground around it and laid out the subdivision streets. The terrain around the apartment complex is flat, including the area in front of the buildings along Prairie Street to the west.

At trial, limited partner Darrell Layman testified that if the area in front of the apartment complex, measuring 300 feet along Prairie Street and 30 feet deep, were to be turned into a parking lot, there would be room for only 30 parking spaces. He stated that he had not investigated the cost of rocking or asphalting this area for that purpose. Layman testified further that although there was a distance of 20 feet between the apartment buildings themselves, there would not be enough "usable" space for a driveway from Prairie Street to the existing parking lot because there were stairways leading to basement apartments on the sides of the buildings. He had not investigated the cost of running a driveway either between the buildings or adjacent to the end building on the north. He testified that from his experience in the layout and design of apartment buildings, "it would be a very dangerous situation" for the tenants of the apartments if driveways were run between the buildings up next to the sides of the buildings.

On cross-examination regarding the relative safety of possible parking arrangements, Layman stated that the present situation was safer than having the driveways run between the buildings from Prairie Street. Defendants' counsel then asked, "Okay, how about if you parked in front, and on the side, would that be safer than it is now," to which Layman responded, "That would be fine." Layman stated, however, that even though there would be space for an additional 12 to 14 cars on the north side of the apartment complex, it

would not be possible to back a car out of such a parking space without crossing over the property line to the north onto the defendants' property.

Layman testified finally that the plaintiff was unaware of easement problems as to the properties in question at the time parcel B was deeded to the defendants "or it wouldn't have been deeded."

Defendant Larry Manns testified on his own behalf that he purchased parcel B from the plaintiff in the summer of 1982 and then, shortly afterwards, had a survey made of the property. The survey indicated possible encroachments by the plaintiff as to the driveways in question, and, finding no recorded easements to the plaintiff following a title search, Manns notified the plaintiff to discontinue its use of the driveways. Manns stated that when he first contacted the plaintiff in November 1982, the plaintiff still owned parcel C south of the shopping center, although parcel C was later sold to an unrelated party.

On cross-examination, the following exchange took place:

"[Plaintiff's counsel]: Mr. Manns, did you look at this land before you bought it?

[Defendant Manns]: Yes, sir.

Q. Did you see the, did you see the driveway here before you bought it?

A. Yes, sir.

Q. And the apartment, did you see the rock drive that shows on the plat that you had done?

A. I wasn't sure the rock drive was on my land.

Q. But you saw it was there?

A. I saw it was there.

Q. You just weren't sure exactly where the lots—

A. My answer would be that I bought three pieces of property out there at the same time. All three different tracts.

\* \* \*

Q. There was a rock drive there, where it shows, on the property before you bought it, is that correct?

A. I don't understand your question.

Q. This rock drive, it shows on your plat, was that in existence before you bought the property?

A. Yes.

Q. [And you had] the plat done after you bought the property?

A. Right."

In its memorandum of judgment entered at the close of the evi-

dence, the trial court noted that since the claimed easements had been used by the plaintiff as common grantor prior to separation of title and since the defendant admitted that both the rock drive along the shopping center and the driveway into the apartment complex were apparent to him when he purchased the property upon which they were located, the only requirement at issue as to the claimed easements was whether such easements were necessary to the beneficial enjoyment of the dominant estate. The court observed that while absolute necessity was not required, the easements by implication would not be sanctioned if available alternatives affording reasonable means of ingress and egress existed. As to the claimed easement for the shopping center, the court found that although the shopping center had been built from lot line to lot line, leaving no access to the back part of the lot, the plaintiff was "using a rock drive on the east side [of the lot] [apparently belonging] to another, not a party to this suit." The court continued, "There is access for ingress and egress from [Bethalto Drive] into the shopping complex where an all-asphalt parking lot exists, which is the front [sic] of the stores in the shopping complex."

From the evidence concerning the apartment complex, the court found that the driveway across the defendants' land was "the only access into the complex at this time." The court stated, however, that "Prairie Street, which runs in front of the complex, [is] flat in terrain, possibly allowing access into the apartment complex." The court concluded:

> "In this case there was no evidence presented by plaintiff as to the expense that would be involved in creating feasible access to these properties. The access problem arose because of the conduct of plaintiff in selling the property that contains the present access routes, whether done by design or inadvertently.
>
> From the evidence presented to the Court, it is the finding of the court that the evidence simply suggests that it would be more convenient for plaintiff to cross defendant's land but not reasonably necessary."

The court ruled, therefore, that no easement existed in the plaintiff as to either property and denied the plaintiff's claim for injunctive relief.

Following a post-trial motion by the plaintiff, the trial court vacated that portion of its judgment concerning the apartment complex easement, stating only that "the court *** finds that the easement for the apartment complex is highly convenient and reasonably neces-

sary for the use and enjoyment of the complex." As to the claimed easement for the shopping center, the court stated:

"There is adequate ingress and egress into the shopping center as well as to the back of the shopping center. The evidence showed that the trucks could enter and turn around without using the defendants' property by the use of the existing rock driveway on the east side of the shopping center which is now in use and is not a subject of this lawsuit. The use of defendants' property would be more convenient but is not reasonably necessary for the plaintiff."

Accordingly, the court ruled that its prior judgment finding no easement as to the shopping center should stand.

On appeal from the court's judgment regarding the shopping center easement, the plaintiff contends that the court erred in finding that such easement was not reasonably necessary where the evidence showed that alternative access to the rear of the shopping center required the use of another's property and constituted an unreasonable burden upon the plaintiff. The plaintiff further asserts that since the roadway to the rear of the shopping center was in open and visible use at the time of sale of parcel B to the defendant, the defendant took the property subject to the servitude then existing, as the parties would be presumed to contract with reference to the condition of the property at the time of sale. The defendant counters, however, that under the principle that a grantor may not derogate from his own grant, easements by implication arise in favor of a grantee only and thus the easements in question should not be implied in favor of the plaintiff as grantor. The defendant contends additionally that the court erred in vacating its prior judgment as to the apartment complex easement where the evidence showed that there was possible access to the parking lot from Prairie Street without using the defendant's property and the plaintiff had made no showing that such alternative access would involve unreasonable expense.

■■ ■ It is settled that where the owner of an estate has arranged it so that one portion thereof derives a benefit from the other of a permanent, open and visible character, which is reasonably necessary to the fair enjoyment of that portion, then upon severance of title an easement may arise by implication in favor of the portion so benefited even though such easement is not reserved or specified in the deed. (*People ex rel. Helgeson v. Hackler* (1961), 21 Ill. 2d 267, 171 N.E.2d 599; *Sheehan v. Sagona* (1958), 13 Ill. 2d 341, 148 N.E.2d 795; 16A Ill. L. & Prac. *Easements* sec. 17 (1971).) Such an easement arises as an inference of the intent of the parties to a con-

veyance of land as drawn from the circumstances surrounding the sale. (Restatement of Property sec. 476, comment a (1944).) The parties are presumed to contract with reference to the conditions of the realty at the time of sale, and, in the absence of an expressed contrary intent, a conveyance will impart a grant of property with all the benefits and burdens that existed at the time of sale. *Frantz v. Collins* (1961), 21 Ill. 2d 446, 173 N.E.2d 437.

While the defendant here asserts that no easement may be implied in favor of the grantor of property in derogation of his grant, Illinois courts have made no such distinction between easements implied in favor of a grantee (implied grant of easement) and those implied in favor of a grantor (implied reservation of easement). (See 16A Ill. L. & Prac. *Easements* sec. 16 (1971).) Rather, in stating the rule regarding the creation of easements by implication, the court in *Bihss v. Sabolis* (1926), 322 Ill. 350, 352, 153 N.E. 684, 685, observed:

> "This is not a rule for the benefit of purchasers, only, but is entirely reciprocal. Hence, if instead of a benefit a burden has been imposed upon the portion sold, the purchaser, provided the marks of this burden are open and visible, takes the property with a servitude upon it. The parties are presumed to contract with reference to the condition of the property at the time of the sale, and neither has a right, by altering arrangements then openly existing, to change materially the relative value of the respective parts. [Citations.]"

Thus, Illinois may be said to follow the generally accepted view recognizing the implication of easements in favor of a grantor as well as a grantee. 28 C.J.S. *Easements* sec. 34 (1941); see 25 Am. Jur. 2d *Easements and Licenses* sec. 27, at 441 (1966); Annot., 164 A.L.R. 1001, 1003-05 (1946).

In the later case of *Walker v. Witt* (1954), 4 Ill. 2d 16, 122 N.E.2d 175, the supreme court reaffirmed the principle that a grantor and grantee stand on equal footing regarding the implication of easements. The court noted that while in some decisions courts have held that an implied reservation of easement will not be found in the absence of a showing of real necessity, "[t]his distinction does not prevail in the Illinois cases, and *** the degree of necessity required is not so strict, it being necessary only that 'the use of the claimed easement be essential to the beneficial enjoyment of the land granted or retained.' " (*Walker v. Witt* (1954), 4 Ill. 2d 16, 22, 122 N.E.2d 175, 178; see also *Powers v. Heffernan* (1908), 233 Ill. 597, 84 N.E. 661.) Under the facts in *Walker*, the court found that even

"this more liberal requirement" (*Walker v. Witt* (1954), 4 Ill. 2d 16, 22, 122 N.E.2d 175, 178) of necessity had not been satisfied and denied the claimed easement. While we have found no Illinois case in which an implied reservation was established in factual circumstances resembling those in the case at bar, courts in other jurisdictions applying a similar rule have found such easements to exist in favor of a grantor who has conveyed property containing a roadway that provided access to his retained property. (*Cf. Burns Manufacturing Co. v. Boehm* (1976), 467 Pa. 307, 356 A.2d 763 (implied reservation of easement found in 20 foot access route to lot retained by grantors where such route was paved and had been used by grantors as common owners of lots for 15 years); *Horowitz v. Noble* (1978), 79 Cal. App. 3d 120, 144 Cal. Rptr. 710 (upon sale of two contiguous lots, owners-grantors entitled to implied reservation of easement in portion of conveyed lot used as means of ingress and egress to apartment building garages on remaining lot); *Krueger v. Beecham* (1945), 116 Ind. App. 89, 61 N.E.2d 65 (implied reservation of easement found in roadway across defendants' property to adjoining lot retained by common grantor where roadway was readily apparent and reasonably necessary for enjoyment of retained lot).) We, therefore, reject the defendant's preliminary contention that the claimed easements in the instant case could not arise by implied reservation in the plaintiff as grantor.

■ The three requirements for the implication of such an easement, whether in favor of grantor or grantee, are that (1) there must be a severance of title, (2) the use giving rise to the easement must have been continuous, obvious or manifestly permanent prior to the severance of title, and (3) the claimed easement must be necessary to the beneficial enjoyment of the land granted or retained. (16A Ill. L. & Prac. *Easements* sec. 17, at 485 (1971).) As alluded to above, in order to satisfy this latter requirement of necessity, the easement need not be really or absolutely necessary to the enjoyment of the claimant's property, but it is sufficient if it is "reasonable, highly convenient and beneficial to the dominant estate." (*People ex rel. Helgeson v. Hackler* (1961), 21 Ill. 2d 267, 271, 171 N.E.2d 599; *Frantz v. Collins* (1961), 21 Ill. 2d 446, 173 N.E.2d 437.) In this regard, the implied easement based upon a pre-existing, obvious servitude differs from an implied easement based solely upon the need for access to landlocked property—the so-called easement by necessity or "way of necessity." (25 Am. Jur. 2d *Easements and Licenses* sec. 27, at 441-42, sec. 34, at 447 (1966); Annot., 164 A.L.R. 1001, at 1001-02 (1946); *cf. Shive v. Schaefer* (1985), 137 Ill. App. 3d 13, 484 N.E.2d

394 (requisite degree of necessity not present for easement by necessity where there was no showing of prior use and plaintiff had conveyed away convenient access to retained property).) Whereas, in the latter instance, a greater degree of necessity may be required to sustain the implication of an easement when no pre-existing use has been shown, "[t]he fact that a use has been made may justify the inference that it was intended to continue though the degree of necessity existing is less than would be required for the implication of an easement on the basis of necessity alone." (Restatement of Property sec. 476, comment i, at 2987 (1944).) Thus, while some showing of necessity for the continuance of the use must be shown even where a prior use has been made, "to the extent *** that the prior use strengthens the implication, the degree of necessity requisite for implication is reduced." Restatement of Property sec. 476, comment i, at 2987 (1944).

In the instant case the parties readily conceded that the first two elements for implication of an easement—severance of title and prior use—had been satisfied. From a review of the evidence we believe that the trial court, in focusing upon the third element of necessity, placed inordinate emphasis upon this requirement and failed to give proper consideration to the element of prior use. The evidence at trial showed that both the driveway to the rear of the shopping center and that to the apartment complex parking lot had been in use by the plaintiff or its predecessors in title since the 1960's when the respective properties were developed. Both driveways were permanent in character, being either rock or gravel covered, and were obviously for the benefit of the shopping center and the apartment complex located on the plaintiff's land. Perhaps most significantly, the defendant admitted that he was aware of both driveways and of their use by the plaintiff before he purchased parcel B from the plaintiff. Since implied easements arise as an inference of the parties' intent as derived from the circumstances of a sale, this evidence of prior use and the parties' knowledge thereof was an important factor in determining the parties' intent regarding continued use of the driveways. See *Sheehan v. Sagona* (1958), 13 Ill. 2d 341, 148 N.E.2d 795; *Cihak v. Klekr* (1886), 117 Ill. 643, 7 N.E. 111; Restatement of Property sec. 476, comment j, at 2988 (1944): "Parties to a conveyance may *** be assumed to intend the continuance of uses known to them which are in a considerable degree necessary to the continued usefulness of the land. Also they will be assumed to know and to contemplate the continuance of reasonably necessary uses which have so altered the premises as to make them apparent upon

reasonably prudent investigation.

In light of this strong showing of prior use, we believe that the evidence in the instant case was sufficient to fulfill the further requirement of reasonable necessity of the claimed easements and that the trial court's finding to the contrary regarding the shopping center easement was against the weight of the evidence so as to require reversal. While the trial court ruled that the driveway to the rear of the shopping center on the defendant's property was simply "more convenient *** but not reasonably necessary" to the plaintiff's use of the property, this finding was premised on the assumption that the driveway on the other side of the shopping center provided adequate access for trucks making deliveries to the stores in the shopping center. The evidence was uncontradicted, however, that many of the deliveries were made by semitrailer trucks that would have to "jockey around quite a bit" in order to turn around behind the stores and that there may be as many as four or five trucks backed up at one time, making it impossible to turn around and go out the way they came in. For this reason, the pattern for deliveries to the stores had always been to circle around the shopping center, using the driveways on both sides. Use of the driveway on the defendant's property was thus quite beneficial to the fair enjoyment of the plaintiff's property, notwithstanding the driveway located on the other side of the shopping center. In view of these circumstances openly existing at the time of sale, it would be unreasonable to assume that the plaintiff intended to relinquish the use of this servitude on the defendant's property and assume the burden of trying to find alternate delivery routes to the stores in the shopping center. The evidence, moreover, regarding the difficulty of making deliveries to the front of the shopping center was sufficient to demonstrate the unreasonableness of such an alternative measure, despite the plaintiff's failure to establish the precise cost of reconstructing the shopping center for that purpose. We hold, therefore, that the plaintiff sustained its burden of proof as to the implied easement for the shopping center and accordingly reverse the trial court's judgment denying injunctive relief as to this easement.

■ Finally, with regard to the claimed easement over the defendant's property to the apartment complex parking lot, we find that the trial court's determination that such easement was "highly convenient and reasonably necessary" for the use and enjoyment of the complex was amply supported by the evidence at trial. The driveway in question had provided the only access to the parking lot behind the complex for over 15 years, and the evidence showed that

the space between the buildings was inadequate to accommodate alternative driveways to the parking lot from Prairie Street, considering the plan of the buildings and the need to insure the safety of residents entering and leaving from basement apartments on the side of the buildings. The testimony indicated, moreover, that even if the plaintiff were required to construct a new parking lot in front of the buildings, there would not be adequate parking spaces for the tenants of the apartment building. We hold, therefore, that the trial court's ruling finding an implied easement for the plaintiff as to the apartment complex driveway should be affirmed.

For the reasons stated in this opinion, we affirm the trial court's judgment finding an implied easement as to the apartment complex property and reverse the court's judgment finding no easement as to the shopping center property.

Affirmed in part, reversed in part.

HARRISON, J., concurs.

PRESIDING JUSTICE KASSERMAN, dissenting:

I am unable to conclude, as does the majority, that plaintiff is entitled to an easement by implication over the parcels of real estate that it conveyed to the defendants; therefore, I respectfully dissent.

The record indicates that the plaintiff is the owner of the real estate upon which the shopping center (designated as parcel A on plaintiff's exhibit No. 1) and the apartment complex (designated as parcel E on plaintiff's exhibit No. 1) are located. It is further established that the shopping center was constructed in 1967 and that the apartment complex was constructed "in the 1960's." Thus, plaintiff and its predecessors in title were the owners of parcel A for at least 18 years and were the owners of parcel E for at least 14 years prior to the sale of parcel B to the defendants. Therefore, I conclude that it would be incongruous to permit plaintiff to derogate from its grant to defendants. Defendants had every reason to believe that plaintiff would make adequate provision for its own mode of ingress and egress to parcels A and E when it specifically conveyed parcel B to the defendants. Had plaintiff desired to have retained easements over a portion of parcel B to provide ingress and egress to parcels A and E, it could have done so.

Moreover, defendant Larry Manns testified that when he notified the plaintiff in November 1982 of the encroachment upon his property by the driveway claimed by plaintiff, plaintiff then was still the

owner of parcel C, lying immediately to the south of the shopping center. Since the relative rights of the parties must be determined as they existed as of the date of the conveyance to defendant in the summer of 1982, it is my conclusion that plaintiff should be required to establish, and has failed to do so, that it did not have access to parcel A, the shopping center, across parcel C to Rou Des Chateaux.

Furthermore, since parcel E is bounded on its entire western boundary by Prairie Street, plaintiff should be required to have either provided its own ingress and egress to parcel E from Prairie Street or, should that have been impossible, to have reserved an easement across parcel B to connect the parking lot on parcel E with Rou Des Chateaux.

With the exception of the decision of the court in *Bihss v. Sabolis* (1926), 322 Ill. 350, 153 N.E. 684, the cases relied upon by the majority are ones in which a purchaser is attempting to enforce the creation of an easement by implication, vastly different from the instant case where the seller is attempting to derogate from its grant. If the rationale of *Bihss v. Sabolis* still exists in Illinois, the case at bar is distinguishable because it could not be said that the buyer in the case at bar is attempting to alter arrangements openly existing at the time of the conveyance so as to change materially the relative value of the respective parts, which was the basis for the court's decision in *Bihss*.

In the case at bar, plaintiff was the owner of parcels A, B, C, and E at the time of the conveyance of parcel B to the defendants. It, and its predecessors in interest, had owned parcels A and E for 18 and 14 years respectively. It is only proper that plaintiff should be required to have provided for its own mode of ingress and egress to parcels A and E when it conveyed parcel B to defendants. Moreover, it is my conclusion that it has not been satisfactorily established that plaintiff did not have a reasonably convenient alternate avenue of ingress and egress to parcel A across parcel C at the time of the conveyance to defendants.

For the foregoing reasons, I would decide all issues of the instant appeal in favor of defendants.