(No. 63092.—

GRANITE PROPERTIES LIMITED PARTNERSHIP, Appellee, v. LARRY R. MANNS *et al.*, Appellants.

*Opinion filed June 10, 1987.—Rehearing denied October 5, 1987.*

GOLDENHERSH, J., took no part.

G. Edward Moorman, of Alton, for appellants.

Charlene E. Novick and Mark Glass, of Carr, Korein, Kunin, Schlichter & Brennan, of East St. Louis, for appellee.

JUSTICE RYAN delivered the opinion of the court:

The plaintiff, Granite Properties Limited Partnership, brought this suit in the circuit court of Madison County, seeking to permanently enjoin the defendants, Larry and Ann Manns, from interfering with the plaintiff's use and enjoyment of two claimed easements over driveways which exist on the defendants' property. One driveway provides ingress to and egress from an apartment complex and the other to a shopping center. Both the apartment complex and the shopping center are situated on the plaintiff's property. Following a bench trial, the circuit court entered judgment against the plaintiff and in favor of the defendants as to both claimed easements. Following argument of the plaintiff's post-trial motion, the circuit court granted permanent injunctive relief as to the claimed apartment complex easement, but reaffirmed its decision denying the claimed shopping center easement. Both parties appealed from that portion of the judgment adverse to them. The appellate court, with one justice dissenting, held that the plaintiff was entitled to easements by implication over the driveways in question.

(140 Ill. App. 3d 561.) We granted the defendants' petition for leave to appeal (94 Ill. 2d R. 315).

The relative location of the subject properties and the claimed easements may be seen by reference to the following rough diagram adapted from the defendants' petition for leave to appeal.

As indicated, the parcels which are the subject of this appeal are adjoining tracts located to the south of Bethalto Drive and to the north of Rou des Chateaux Street in Bethalto, Illinois. The plaintiff and its predecessors in title owned all of the subject properties from 1963 or 1964 until 1982, at which time the parcel labeled "B" was conveyed by warranty deed to the defendants.

The plaintiff currently owns the parcels labeled "A" and "E," which are on the opposite sides of parcel B. The shopping center situated on the parcel designated "A" extends from lot line to lot line across the east-west dimension of that property. To the north of the shopping center is an asphalt parking lot with approximately 191 feet of frontage on Bethalto Drive. To the east of the shopping center on the parcel labeled "D" is a separately owned health club. To the south of parcel A on the parcel denominated "C" are five four-family apartment buildings. The distance between the back of the shopping center and the property line of parcel C is 50 feet. The shopping center's underground utility facilities are located in this area. An apartment complex, known as the Chateau des Fleurs Apartments, is located on the parcel labeled "E." Both of the plaintiff's properties were developed prior to the time parcel B was sold to the defendants. Parcel B remains undeveloped.

The first claimed easement provides access to the rear of the shopping center which is located on parcel A. The center, which was built in 1967, contains several businesses, including a grocery store, a pharmacy, and doctors' offices. The rear of the center is used for deliveries, trash storage and removal, and utilities repair. To gain access to the rear of the shopping center for these purposes, trucks use a gravel driveway which runs along the lot line between parcel A and parcel B. A second driveway, located to the east of the shopping center on parcel D, enables the trucks to circle the shopping center without having to turn around in the limited space behind the stores.

Robert Mehann, the owner of the Save-A-Lot grocery store located in the shopping center, testified on direct examination that groceries, which are delivered to the rear of the store, are loaded by forklift on a concrete pad poured for that purpose. Mehann indicated that

there are large, double steel doors in the back of the store to accommodate items which will not fit through the front door. Mehann testified that semitrailer trucks make deliveries to the rear of the grocery store four days a week, with as many as two or three such trucks arriving daily. An average of 10 to 12 trucks a day, including semitrailer trucks, make deliveries to the grocery store. Mehann further explained on direct examination that because the area behind the Save-A-Lot building extends only 50 feet to the rear property line, it would be difficult, if not impossible, for a semitrailer truck to turn around in the back and exit the same way it came in. In response to a question as to whether it would be feasible to have trucks make front-door deliveries, Mehann suggested that such deliveries would be very disruptive; pallets that would not fit through the front door would have to be broken down into parts, requiring extra work, and there would not be adequate space in the front of the store to do such work during business hours. Mehann admitted on cross-examination that he had not investigated the cost of installing a front door which would be big enough for pallets of groceries to be brought in by forklift. Further cross-examination revealed that there would not be enough space to manipulate the forklift around the front of the store, although it could be run between the shelves of food to the back of the store.

Also called as a witness for Granite Properties Limited Partnership was Darrell Layman, a limited partner. Layman noted that the shopping center had been in continuous operation since 1967 and that the pattern for deliveries had always been to the rear of the individual stores. When asked whether he had "ever seen a semi back up in the rear of the shopping center and go out the way it came in," Layman responded, "That would be impossible." On cross-examination, however, Layman ad-

mitted that, although it was very difficult, he had seen semitrailer trucks exit the same way they came in. Layman also acknowledged on cross-examination that he had not investigated the cost of expanding the size of the front doors of the building. He also claimed that it "would seem impossible" to him to put in any kind of a hallway or passageway which would allow equipment to bring supplies into the stores from the front. On redirect examination, Layman explained that the delivery trucks follow no set schedule and, therefore, their presence may overlap at times. He stated that he had seen as many as four or five delivery trucks backed up. Layman opined that there was "no way" the trucks could back up and turn around when there were multiple trucks present.

The other claimed easement concerns ingress and egress over a driveway which leads into the parking area of the apartment complex situated on parcel E. The complex, which was erected in the 1960's prior to the conveyance of parcel B to the defendants, consists of three buildings containing 36 units. The parking lot, which is situated to the rear of the buildings, provides 72 parking spaces. The only access to the parking lot is by a driveway from Rou des Chateaux, a public street located to the south of the properties. The driveway, which cuts across a small panhandle on the southwestern corner of parcel B, has been in existence since the apartment complex was constructed. The terrain around the apartment complex is flat, including the area in front of the buildings along Prairie Street to the west.

Limited partner Darrell Layman testified at trial that if the area in front of the apartment complex, measuring 300 feet along Prairie Street and 30 feet deep, were to be converted into a parking lot, then there would be room for only 30 parking spaces. He admitted on direct examination that he had not investigated the cost of rocking or asphalting this area for that purpose. Al-

though there was a distance of 20 feet between the apartment buildings, Layman opined that it would not be enough "usable space" to accommodate a driveway from Prairie Street to the existing parking lot because such driveway would interfere with stairways which lead to the basement apartments. Although he admitted that he did not investigate the cost of installing a driveway either between the buildings or adjacent to the end building on the north, Layman concluded that, based on his experience in the layout and design of apartment buildings, "it would be a dangerous situation" for the tenants of the apartments if a driveway were to be run between the buildings or next to their sides. Layman concluded his testimony by claiming that the plaintiff was unaware of any easement problems as to the driveways in question at the time parcel B was deeded to the defendants; otherwise, he asserted, "it would not have been deeded."

The defendant, Larry Manns, stated that he purchased parcel B from the plaintiff in the summer of 1982. Shortly afterwards, he had a survey made of the property. The survey indicated possible encroachments by the plaintiff as to the driveways in question. Finding no recorded easements following a title search, Manns stated that he notified the plaintiff to discontinue its use of the driveways. On cross-examination, Manns admitted that he saw the two driveways before he bought the subject property.

In its memorandum of judgment, the circuit court made the following findings of fact: (1) the claimed easements had been used by the plaintiff, as common grantor, prior to separation of title; (2) the driveways in question were apparent to defendant Larry Manns when he purchased the property upon which they were situated; (3) there is access from Bethalto Drive to the front of the shopping center where an all-asphalt parking lot

exists; and (4) Prairie Street, which runs in front of the apartment complex, is flat in terrain, possibly allowing access to the complex. Because there was no evidence presented by the plaintiff as to the expense that would be involved in creating available alternatives affording reasonable means of ingress to and egress from these properties, the court concluded that the plaintiff created the access problems. Reasoning that it would be more convenient for the plaintiff to cross parcel B but not reasonably necessary, the circuit court refused to find easements by implication over the driveways in question and, therefore, denied the plaintiff's claims for injunctive relief.

Following a post-trial motion by the plaintiff, the circuit court vacated that portion of its judgment concerning the apartment complex easement, stating that "the court finds that the easement to the apartment complex is highly convenient and reasonably necessary for the use and enjoyment of the complex." As to the claimed easement for the shopping center, the court reasoned that because there is adequate ingress to and egress from the shopping center, as well as through the back of the shopping center, "the use of the defendants' property would be more convenient, but not reasonably necessary for the plaintiff." The court therefore affirmed its prior judgment, finding no easement as to the shopping center.

In affirming the circuit court's judgment granting injunctive relief as to the claimed apartment complex easement, the appellate court majority concluded that the circuit court's finding that such easement was highly convenient and reasonably necessary for the use and enjoyment of the complex was amply supported by the evidence at trial. (140 Ill. App. 3d 561, 573-74.) In reversing the circuit court's judgment denying injunctive relief as to the claimed shopping center easement, the appel-

late majority concluded that the circuit court, in focusing upon the degree of necessity required to sustain the implication of an easement, placed inordinate emphasis upon this requirement, thus failing to give proper consideration to the element of prior use. In light of the strong showing of prior use, the appellate majority further concluded that the evidence was sufficient to fulfill the requirement of necessity of the claimed shopping center easement. 140 Ill. App. 3d 561, 573.

The plaintiff contends in this court that it acquired, by implied reservation, easements over the driveways which provide access to the rear of the shopping center located on parcel A and to the parking lot of the apartment complex situated on parcel E. Plaintiff alleges that parcels A, B and E were held in common ownership by the plaintiff and its predecessors in title until 1982, at which time the defendants received a warranty deed to parcel B, that the driveways in question were apparent and obvious, permanent, and subject to continuous, uninterrupted, and actual use by the plaintiff and its predecessors in title until the time of severance of unity of ownership, and that the driveways are highly convenient and reasonably necessary for the beneficial use and enjoyment of the shopping center and the apartment complex. Therefore, the plaintiff maintains that, upon severance of unity of title, the defendants took parcel B subject to the servitudes then existing, as the parties are presumed to convey with reference to the existing conditions of the property.

We note at the outset that the attempt here is to establish easements by implied reservation, rather than by implied grant. As the appellate court in this case correctly observed:

> "While the defendant here asserts that no easement may be implied in favor of the grantor of property in derogation of his grant, Illinois courts have made no such

distinction between easements implied in favor of a grantee (implied grant of easement) and those implied in favor of a grantor (implied reservation of easement). (See 16A Ill. L. & Prac. *Easements* sec. 16 (1971).) Rather, in stating the rule regarding the creation of easements by implication, the court in *Bihss v. Sabolis* (1926), 322 Ill. 350, 352, 153 N.E.2d 684, 685, observed:

> 'This is not a rule for the benefit of purchasers, only, but is entirely reciprocal. Hence, if instead of a benefit a burden has been imposed upon the portion sold, the purchaser, provided the marks of this burden are open and visible, takes the property with a servitude upon it. The parties are presumed to contract with reference to the condition of the property at the time of the sale, and neither has a right, by altering arrangements then openly existing, to change materially the relative value of the respective parts. [Citations.]'

Thus, Illinois may be said to follow the generally accepted view recognizing the implication of easements in favor of a grantor as well as a grantee. 28 C.J.S. *Easements* sec. 34 (1941); see 25 Am. Jur. 2d *Easements and Licenses* sec. 27, at 441 (1966); Annot., 164 A.L.R. 1001, 1003-05 (1946)." *Granite Properties Limited Partnership v. Manns* (1986), 140 Ill. App. 3d 561, 570.

On the merits, the crucial issue is whether, in conveying that portion of its property now owned by the defendants (parcel B), the plaintiff retained easements by implication over the driveways in question. Our analysis begins with a brief, summary examination of the implied easement principles as they are stated and reflected in both the decisions of this court and the major secondary sources of American real property law.

There are two types of implied easements—the easement by necessity and the easement implied from a preexisting use. The easement by necessity usually arises when an owner of land conveys to another an inner portion thereof, which is entirely surrounded by lands

owned either by the grantor or the grantor plus strangers. Unless a contrary intent is manifested, the grantee is found to have a right-of-way across the retained land of the grantor for ingress to, and egress from, the landlocked parcel. Similarly, an easement is implied by way of necessity in the deed when the owner of lands retains the inner portion, conveying to another the balance. See, *e.g., Diesenroth v. Dodge* (1956), 7 Ill. 2d 340, 345; *Walker v. Witt* (1954), 4 Ill. 2d 16, 23; *Finn v. Williams* (1941), 376 Ill. 95, 99; *Trapp v. Gordon* (1937), 366 Ill. 102, 111; *Gilfroy v. Randall* (1916), 274 Ill. 128, 130-32; see also 2 American Law of Property sec. 8.38 (A.J. Casner ed. 1952); 3 R. Powell, The Law of Real Property sec. 410 (P. Rohan ed. 1987); 2 G. Thompson, Commentaries on the Modern Law of Real Property secs. 361-64 (rep. ed. 1980); see generally 25 Am. Jur. 2d *Easements & Licenses* sec. 35-37 (1966); 16A Ill. L. & Prac. *Easements* sec. 19 (1957).

The easement implied from a prior existing use, often characterized as a "quasi-easement," arises when an owner of an entire tract of land or of two or more adjoining parcels, after employing a part thereof so that one part of the tract or one parcel derives from another a benefit or advantage of an apparent, continuous, and permanent nature, conveys or transfers part of the property without mention being made of these incidental uses. In the absence of an expressed agreement to the contrary, the conveyance or transfer imparts a grant of property with all the benefits and burdens which existed at the time of the conveyance of the transfer, even though such grant is not reserved or specified in the deed. (See, *e.g., Beloit Foundry Co. v. Ryan* (1963), 28 Ill. 2d 379, 389; *Bihss v. Sabolis* (1926), 322 Ill. 350, 352; *Powers v. Heffernan* (1908), 233 Ill. 597, 599; see also 3 R. Powell, The Law of Real Property sec. 411 (P. Rohan ed. 1987); 2 G. Thompson, Commentaries on the Modern

Law of Real Property secs. 351, 352 (rep. ed. 1980); Denissen, *Private Ways: Title and Title Evidence*, 45 Ill. B.J. 686, 689 (1957).) This court has stated on numerous occasions that an easement implied from a preexisting use is established by proof of three elements: first, common ownership of the claimed dominant and servient parcels and a subsequent conveyance or transfer separating that ownership; second, before the conveyance or transfer severing the unity of title, the common owner used part of the united parcel for the benefit of another part, and this use was apparent and obvious, continuous, and permanent; and third, the claimed easement is necessary and beneficial to the enjoyment of the parcel conveyed or retained by the grantor or transferrer. See, *e.g., People ex rel. Helgeson v. Hackler* (1961), 21 Ill. 2d 267, 270; *Sheehan v. Sagona* (1958), 13 Ill. 2d 341, 345; *Partee v. Pietrobon* (1957), 10 Ill. 2d 248, 252; *Gilbert v. Chicago Title & Trust Co.* (1955), 7 Ill. 2d 496, 499; *Kling v. Ghilarducci* (1954), 3 Ill. 2d 454, 459; *Carter v. Michel* (1949), 403 Ill. 610, 617; *Leitch v. Hine* (1946), 393 Ill. 211, 226; *Liberty National Bank v. Lux* (1941), 378 Ill. 329, 331-32; see also R. Cunningham, W. Stoebuck & D. Whitman, The Law of Property sec. 8.4 (1984); 16A Ill. L. & Prac. *Easements* sec. 17 (1957); see generally Leesman, *The Rationale of the Quasi-Easement in Illinois*, 30 Ill. L. Rev. 963 (1936); Annot., 94 A.L.R. 3d 502 (1979).

As the above discussion indicates, easements created by implication arise as an inference of the intention of the parties to a conveyance of land. This inference, which is drawn from the circumstances surrounding the conveyance alone, represents an attempt to ascribe an intention to parties who had not thought or had not bothered to put the intention into words, or to parties who actually had formed no intention conscious to themselves. To fill these common gaps resulting in incomplete

thought, courts find particular facts suggestive of intent on the part of the parties to a conveyance. In the case of an easement implied from a preexisting use, proof of the prior use is evidence that the parties probably intended an easement, on the presumption that the grantor and the grantee would have intended to continue an important or necessary use of the land known to them that was apparently continuous and permanent in its nature. Where an easement by necessity is claimed, however, there is no requirement of proof of a known existing use from which to draw the inference of intention. This leaves proof of necessity alone to furnish the probable inference of intention, on the presumption that the grantor and the grantee do not intend to render the land unfit for occupancy.

This essentially is the position taken by the Restatement of Property. The Restatement describes a doctrine creating easements "by implication from the circumstances under which the conveyance was made." (Restatement of Property sec. 474 (1944).) This implication "arises as an inference of the intention of those making a conveyance." (Restatement of Property sec. 474, comment *b* (1944).) The Restatement operates on the basis of eight "important circumstances" from which the inference of intention may be drawn: whether the claimant is the conveyor or the conveyee; the terms of the conveyance; the consideration given for it; whether the claim is made against a simultaneous conveyee; the extent of necessity of the easement to the claimant; whether reciprocal benefits result to the conveyor and the conveyee; the manner in which the land was used prior to its conveyance; and the extent to which the manner of prior use was or might have been known to the parties. (Restatement of Property sec. 476 (1944).) These eight factors vary in their importance and relevance according to

whether the claimed easement originates out of necessity or for another reason.

In applying the Restatement's eight important circumstances to the present case, the fact that the driveways in question had been used by the plaintiff or its predecessors in title since the 1960's, when the respective properties were developed, that the driveways were permanent in character, being either rock or gravel covered, and that the defendants were aware of the driveways' prior uses before they purchased parcel B would tend to support an inference that the parties intended easements upon severance of the parcels in question. (See Restatement of Property sec. 476, comments *i, j* (1944).) Although the prior uses which the plaintiff seeks to continue existed during the common ownership of the parcels in question, under circumstances where the defendants were fully informed by physical appearance of their existence, the defendants, nevertheless, argue that there are two factors which overwhelmingly detract from the implication of an easement: that the claimant is the conveyor and that the claimed easement can hardly be described as "necessary" to the beneficial use of the plaintiff's properties. Relying on the principle that a grantor should not be permitted to derogate from his own grant, the defendants urge this court to refuse to imply an easement in favor of a grantor unless the claimed easement is absolutely necessary to the beneficial use and enjoyment of the land retained by the grantor. The defendants further urge this court not to cast an unreasonable burden over their land through imposition of easements by implication where, as here, available alternatives affording reasonable means of ingress to and egress from the shopping center and the apartment complex allegedly exist.

While the degree of necessity required to reserve an easement by implication in favor of the conveyor is

greater than that required in the case of the conveyee (Restatement of Property sec. 476, comment *c* (1944)), even in the case of the conveyor, the implication from necessity will be aided by a previous use made apparent by the physical adaptation of the premises to it. (Restatement of Property sec. 476, comment *j* (1944).) Moreover, the necessity requirement will have a different meaning and significance in the case involving proof of prior use than it will in a case in which necessity alone supports the implication; otherwise, proof of prior use would be unnecessary. (Restatement of Property sec. 476, comment *g* (1944).) Thus, when circumstances such as an apparent prior use of the land support the inference of the parties' intention, the required extent of the claimed easement's necessity will be less than when necessity is the only circumstance from which the inference of intention will be drawn. While some showing of necessity for the continuance of the use must be shown where a prior use has been made, to the extent that the prior use strengthens the implication, the degree or extent of necessity requisite for implication is reduced. (Restatement of Property sec. 476, comment *i* (1944).) As one treatise concludes:

> "If a previous use is continuous and apparent, an easement may be created by implication even though the need for the use to be made is not sufficiently great to meet the test of necessity as applied in the absence of such a previous use. Hence, the test is phrased in terms of *reasonable necessity* rather than in terms of unqualified necessity. A use is necessary, it is often said, when without it no effective use could be made of the land to be benefited by it. *Where, because of a continuous and apparent previous use, the test of necessity becomes that of reasonable necessity, it is said that a use is reasonably necessary when it is reasonably convenient to the use of the land benefited.* In fact, however, reasonable necessity too is a flexible test. *The more pronounced a continuous*

*and apparent use is, the less the degree of convenience of use necessary to the creation of an easement by implication.*" (Emphasis added.) (2 American Law of Property sec. 8.43 (A.J. Casner ed. 1952).)

As the above quote demonstrates, the "degree or extent of necessity" rubric suggests a concept with variable parameters. Professor Thompson notes the various phrases courts have used to describe the "extent of necessity" in cases in which there is proof of prior use:

"Basically, three things are essential to the creation of an easement upon the severance of an estate, upon the ground that the owner before the severance made use of an improvement in one part of the estate for the benefit of another: first, there must be a separation of the title, for, so long as there is unity of ownership, there can be no easement; second, it must appear that before the separation took place the use which gives rise to the easement shall have been so long continued and so obvious or manifest as to show that it was meant to be permanent; and, third, *the easement shall be necessary to the proper enjoyment of the land or to its reasonable, convenient or beneficial enjoyment, 'reasonably necessary' to its enjoyment or use, 'convenient use,' or 'clearly necessary' to its beneficial use.*" (Emphasis added.) 2 G. Thompson, Commentaries on the Modern Law of Real Property sec. 352, at 305-07 (rep. ed. 1980).

Professor Powell, in his treatise, offers an alternative solution to the problem of stating the "extent of necessity" concept for the prior use situation that distinguishes it from the similar concept in the easement by necessity. Powell suggests that in a case with proof of prior use, the word "necessity" should be replaced by the phrase "important to the enjoyment of the conveyed quasi-dominant [or quasi-servient] parcel." As Powell explains:

"The requirement that the quasi-easement must have been 'important for the enjoyment of the conveyed quasi-dominant [or quasi-servient] parcel' is highly elastic.

> Some courts say that the use must be one which is 'reasonably necessary to the enjoyment of the [conveyed or retained] land.' Others demand a use which is necessary for the beneficial, convenient, comfortable or reasonable enjoyment of such land. *When this prerequisite is phrased in terms of 'necessity,' a court is no longer properly considering the problem of implication from a quasi-easement but has crossed over (perhaps unwittingly) into the domain of easements by necessity (see supra par. 410).* The English courts have avoided this possible confusion by dispensing completely with this third requirement, finding easements by implication from a quasi-easement which is both 'apparent' and 'continuous,' and without proof of its 'importance.' In the American courts, *'importance' strengthens the inference that the claimed easement was intended by the parties."* (Emphasis added.) 3 R. Powell, The Law of Real Property sec. 411[2] (P. Rohan ed. 1987).

Notwithstanding their difference in use of terminology, the authorities agree that the degree or extent of necessity required to create an easement by implication differs in both meaning and significance depending on the existence of proof of prior use. Hence, given the strong evidence of the plaintiff's prior use of the driveways in question and the defendants' knowledge thereof, we must agree with the appellate court majority that the evidence in this case was sufficient to fulfill the elastic necessity requirement. We approve of the appellate court majority's application of the facts of this case to the law as we have described it herein. As the appellate majority thoroughly explained:

> "While the trial court ruled that the driveway to the rear of the shopping center on the defendant's property was simply 'more convenient *** but not reasonably necessary' to the plaintiff's use of the property, this finding was premised on the assumption that the driveway on the other side of the shopping center provided adequate access for trucks making deliveries to the stores in the

shopping center. The evidence was uncontradicted, however, that many of the deliveries were made by semi-trailer trucks that would have to 'jockey around quite a bit' in order to turn around behind the stores and that there may be as many as four or five trucks backed up at one time, making it impossible to turn around and go out the way they came in. For this reason, the pattern for deliveries to the stores had always been to circle around the shopping center, using the driveways on both sides. Use of the driveway on the defendant's property was thus quite beneficial to the fair enjoyment of the plaintiff's property, notwithstanding the driveway located on the other side of the shopping center. In view of these circumstances openly existing at the time of sale, it would be unreasonable to assume that the plaintiff intended to relinquish the use of this servitude on the defendant's property and assume the burden of trying to find alternate delivery routes to the stores in the shopping center. The evidence, moreover, regarding the difficulty of making deliveries to the front of the shopping center was sufficient to demonstrate the unreasonableness of such an alternative measure, despite the plaintiff's failure to establish the precise cost of reconstructing the shopping center for that purpose. We hold, therefore, that the plaintiff sustained its burden of proof as to the implied easement for the shopping center and accordingly reverse the trial court's judgment denying injunctive relief as to this easement.

Finally, with regard to the claimed easement over the defendant's property to the apartment complex parking lot, we find that the trial court's determination that such easement was 'highly convenient and reasonably necessary' for the use and enjoyment of the complex was amply supported by the evidence at trial. The driveway in question had provided the only access to the parking lot behind the complex for over 15 years, and the evidence showed that the space between the buildings was inadequate to accommodate alternative driveways to the parking lot from Prairie Street, considering the plan of the buildings and the need to insure the safety of residents

entering and leaving from basement apartments on the side of the buildings. The testimony indicated, moreover, that even if the plaintiff were required to construct a new parking lot in front of the buildings, there would not be adequate parking spaces for the tenants of the apartment building. We hold, therefore, that the trial court's ruling finding an implied easement for the plaintiff as to the apartment complex driveway should be affirmed." *Granite Properties Limited Partnership v. Mann* (1986), 140 Ill. App. 3d 561, 573-74.

For the above reasons, the judgment of the appellate court is affirmed. The cause is remanded to the circuit court of Madison County.

*Affirmed and remanded.*

JUSTICE GOLDENHERSH took no part in the consideration or decision of this case.