JAMES F. KOEHLER *et al.*, Plaintiffs-Appellees, v. JOHN F. PRICE *et al.*, Defendants (Joseph Vericella *et al.*, Defendants-Appellants).—JAMES F. KOEHLER *et al.*, Plaintiffs-Appellees, v. JOHN F. PRICE *et al.*, Defendants-Appellants (Joseph Vericella *et al.*, Defendants).

Fourth District   Nos. 4—90—0160, 4—90—0209 cons.

Opinion filed October 25, 1990.

James T. Finegan, of Bloomington, for appellants John Vericella and Carol Vericella.

Michael J. Wilson, of Bloomington, for appellants John F. Price & Lita U. Price.

Guy C. Fraker and Dawn L. Wall, both Costigan & Wollrab, of Bloomington, for appellees.

JUSTICE GREEN delivered the opinion of the court:

This case concerns a dispute over the existence and extent of an access easement running 10 feet on each side of the boundary line between lots 41 and 42 in a second additional plat of Charterwood Farms subdivision in McLean County. Lot 41 is owned by defendants John F. and Lita U. Price. Defendants Joseph and Carol Vericella own lot 42. Title to both lots had been obtained by mesne conveyances from plaintiffs James F. and Lucy J. Koehler, who had developed the subdivision on property owned by them by separate platting of an original and first and second addition. On March 21, 1988, the Koehlers, together with plaintiffs Ferman and Audrey M. Bishop and Charterwood Farms Recreation Association (Association), filed suit in the circuit court of McLean County against defendants seeking to enjoin defendants from maintaining a fence over the 20-foot-wide strip on the boundaries between lots 41 and 42 and to require them to remove that fence. The strip served as access to a commons area south of those lots.

After an evidentiary hearing, the circuit court entered a judgment on January 2, 1990, (1) finding the existence of an express and implied easement over the 20-foot strip, giving a right of access across that strip to all landowners in the subdivision and their guests; (2) or-

dering defendants to remove the fence; and (3) enjoining defendants from further obstructing the easement. After a further hearing, the circuit court ordered defendants to pay plaintiffs' attorney fees in the amount of $9,656.60 and to pay costs. Defendants have appealed, contending (1) the facts shown here do not support the determination of the existence of an easement for the benefit of all the lot owners and their guests, and (2) there was no basis for the award of attorney fees. We conclude the evidence supported the determination of an implied easement over the 20-foot strip. Accordingly, we affirm the award of injunctive relief and that requiring removal of the fence. We reverse the award of attorney fees.

Plaintiffs' theory that an express easement exists over the area 10 feet on either side of the boundary line between lots 41 and 42 of the second addition to Charterwood Farms subdivision, which was platted in September 1969, arises from language on the face of the plat for that subdivision. On the plat, near the 20-foot wide strip between the two lots, and at another place on the plat, are the words "ACCESS AND DRAINAGE EASEMENT." Lucy Koehler testified she intended the area between lots 41 and 42 to be for access for all lot owners and their guests to a commons area south of those lots. The engineer who drafted the plat testified a purpose for the 20-foot area between the lots was for an easement giving access to the commons area for recreational purposes, for maintenance of that area, and to allow drainage from a road north of lots 41 and 42.

In contending an intent to create an easement was not clearly shown, defendants point out that the legend on the plat indicates utility easements on the plat are shown by a line composed of short dashes. They then point out that similar lines are used to show the boundaries of the alleged access and drainage easement in dispute in this case and one other area having a similar description. Accordingly, defendants argue an intent is shown that the area involved here was to be merely a utility easement dedicated by the plat's acknowledgement. However, the plat shows many lines consisting of a series of dashes in areas where utility easements would likely be placed. The face of the plat contains no description identifying any of these lines as utility easements. Thus, the clear indication of the plat is that lines consisting of a series of dashes are intended to show utility easements, but when such lines have specific designation, as in the case of the area near the dividing line between lots 41 and 42, that specific designation describes the purpose of the lines.

■ However, even when a developer of a subdivision has an intent to create an easement for other lot owners and gives indication

on the plat of the existence of that easement, the parties have called no case to our attention holding the concurrence of those two factors to be sufficient to actually create such an easement. The law is clear that easements may be created in the public by statutory dedications or common law dedications.

■■ ■ Under the provisions of "An Act to revise the law in relation to plats" (Act) (Ill. Rev. Stat. 1967, ch. 109, par. 1 *et seq.*), interests in real estate can be granted by strict compliance with the Act. Such a grant is described as a "statutory dedication." (*Sundstrom v. Village of Oak Park* (1940), 374 Ill. 632, 638, 30 N.E.2d 58, 62.) The plaintiffs agree no "statutory dedication" of an easement over the 20-foot-wide strip occurred here because the acknowledgement of the owner to the plat merely dedicated "to the use of the general public *** all the streets as shown *** and further *** the easements [on the plat] set forth for general utility purposes." The failure of the acknowledgement to refer to the access easement was enough of itself to preclude the existence of a statutory dedication of an access easement. *Sundstrom*, 374 Ill. at 638, 30 N.E.2d at 62.

■■ ■ The parties also agree that even though the acknowledgement of a plat is insufficient to create an easement by "statutory dedication," an express easement may arise from the content of a plat by virtue of a "common law dedication." (*Reiman v. Kale* (1980), 83 Ill. App. 3d 773, 776, 403 N.E.2d 1275, 1277.) According to *Reiman,* in order to establish a common law dedication of an easement, a showing by clear and convincing evidence must be made that (1) the party platting the land intended to create an easement, and (2) the *public* accepted the easement. *Reiman*, 83 Ill. App. 3d at 776, 403 N.E.2d at 1277.

■■ Defendants maintain a common law dedication could not have taken place here, because the public did not accept the easement. In fact, the public could not have accepted the easement, because the easement was not intended to benefit the public but only to benefit the lot owners in the subdivision and their guests. This contention by defendants raises the question of whether either a statutory or a common law dedication can be made to any entity other than the public.

> "Land may be dedicated for any use of a nature which the *general public* can enjoy, which is not prohibited by statute, but, strictly speaking, there can be no dedication to *private* uses, or to uses *public* in their nature but the *enjoyment of which* is restricted to a *limited part of the public*." (Emphasis added.) 26 C.J.S. *Dedication* §8, at 407-08 (1956).

See also 16 Ill. L. & Prac. *Dedication* §12 (1971).

Illinois cases are not entirely clear as to whether a private easement can result from a dedication arising from a plat. In *Miller v. Weingart* (1925), 317 Ill. 179, 147 N.E. 804, the court seems to indicate that the use of a driveway shown on a plat was dedicated to persons owning lots in the subdivision but not to the general public. In *People ex rel. Scott v. Ricketts* (1911), 248 Ill. 428, 94 N.E. 71, and *McChesney v. People ex rel. Johnson* (1881), 99 Ill. 216, plats purported to dedicate areas adjoining platted lots to the use of those lot owners for recreational purposes. In holding the land was not dedicated for public purposes which were exempt from levying for property taxes, the courts seemed to indicate the plat created a right in the lot owners to use the adjoining land for their private purposes.

■ We need not decide whether a private easement can be created by a common law dedication, nor whether a "common law dedication" of an easement of the 20-foot strip occurred here, because we conclude the evidence supported a determination by the circuit court that an easement of access arose by implication. Such easements arise when a portion of a tract passes from the ownership of the remainder of a tract. The easements have been described as those occurring because of necessity and those arising from prior use. The decision in *Granite Properties Limited Partnership v. Manns* (1987), 117 Ill. 2d 425, 512 N.E.2d 1230, is definitive of the law of this State on that subject.

■ As we have indicated, the circuit court found easements both by necessity and prior use to exist in regard to the strip between lots 41 and 42. We deem the proof was sufficient to at least support the finding of an easement by prior use. In that regard, the *Granite* court said:

> "This court has stated on numerous occasions that an easement implied from a preexisting use is established by proof of three elements: first, common ownership of the claimed dominant and servient parcels and a subsequent conveyance or transfer separating that ownership; second, before the conveyance or transfer severing the unity of title, the common owner used part of the united parcel for the benefit of another part, and this use was apparent and obvious, continuous, and permanent; and third, the claimed easement is necessary and beneficial to the enjoyment of the parcel conveyed or retained by the grantor or transferrer." *Granite*, 117 Ill. 2d at 437, 512 N.E.2d at 1236.

Clearly, here, prior to the original sale by the Koehlers of lots 41 and 42, the Koehlers owned a tract which included those lots, the

area called the commons south of those lots, and other unsold lots in the second subdivision. Each of the sales of lots 41 and 42 severed a portion of the tract. Lucy Koehler testified that prior to and after the platting of the second subdivision, she used the strip on the boundary line of lots 41 and 42 as access to the commons and that others did so "[f]requently." She described the strip as "a very popular entry." Dick Brown, the purchaser of the first lot in the original addition to Charterwood Farms, and Art Corra, another early lot owner, both testified they used the strip as access to the commons area prior to the sale of lots 41 and 42. At that time, the Koehlers owned the commons area and were under a duty to furnish it for the use of various lot owners. Thus, the use of the servient strip between lots 41 and 42 was for the benefit of the dominant estate, the commons area.

The record is not entirely clear as to how obvious the use of the 20-foot strip was, but a frequent use would tend to be obvious. Moreover, subsequent to the platting, the access easement was set forth on the plat. Prospective lot purchasers, particularly those purchasing an undeveloped lot, would be likely to look at a copy of the plat to learn where their lot was located. In *Reiman v. Kale* (1980), 83 Ill. App. 3d 773, 778, 403 N.E.2d 1275, 1278-79, after holding no common law dedication for a public road was shown by a plat, the court, nevertheless, concluded that lines on the plat indicating the existence of a road supported a determination that lot owners in the platted area had a private right to use that area for ingress and egress.

The second addition was platted in 1969, and lots 41 and 42 were sold in 1972 and 1973. Accordingly, the time period of the use of the 20-foot strip did not continue for many years, but the circumstance that the commons was usable and used during this period, when taken with the direct testimony of Lucy Koehler, Brown, and Corra, supports a determination by the trier of fact that the use was continuous. As the lots in the subdivision were expected to be built upon, and the commons used by the lots' owners, the use of the strip in question could be found to be permanent within the requirements of *Granite*.

■■ ■ Notably, while necessity is a ground for an implied easement, as distinguished from an easement based on prior use, *Granite* indicates necessity is also an element bearing upon whether a prior-use easement exists. The *Granite* opinion explains that implied easements arise from the inference of a grantor's intent shown by the circumstances. The court concludes that when the circumstance of prior use is present, the elements of the grantor's necessity for and benefit from the easement need not be as strong in order to prove an easement as when necessity is the sole circumstance inferring an intent

for an easement. (*Granite*, 117 Ill. 2d at 439-41, 512 N.E.2d at 1237-38; see also II American Law of Property §8.43 (1952).) Here, the benefit to the dominant estate of an easement for access to and from the commons is obvious. Testimony indicated that the only other way to get to the commons from many lots not bordering on it would be through a second strip between lots and designated on the plat as "ACCESS AND DRAINAGE EASEMENT." Evidence was also introduced showing that strip to be muddy and difficult of passage during certain times of the year. This evidence met the lesser showing of necessity required when it was combined with evidence of prior use.

■■ ■ Defendants maintain that even if we do hold that an implied easement exists, that easement is only for the benefit of lot owners in the second addition and only those whose lots do not border on the commons area. Their theory is based on "the rule that an easement appurtenant to a particular tract cannot be used in conjunction with another tract although the two tracts belong to the same owner and are adjoining." Defendants cite *Miller v. Weingart* (1925), 317 Ill. 179, 147 N.E. 804. Defendants misapply that theory to this case. The commons area was part of the dominant estate when lots 41 and 42 were severed from that estate and became subservient. Access includes both ingress and egress. The commons area remains the dominant estate, and lots 41 and 42 continue to be subservient. By their answer, defendants admit the commons area was sold to plaintiff, the Association, in 1983. Every lot owner in the subdivision is required by agreement with the subdivision to belong to the Association and does. The Association bylaws allow every Association member and his or her guests to use the commons area. Accordingly, those persons through their rights in regard to the dominant estate have a right to use of any easement through the 20-foot strip between lots 41 and 42.

■■ ■ Although no reference for fees was made by plaintiffs, attorney fees were awarded plaintiffs apparently pursuant to Supreme Court Rule 137 (134 Ill. 2d R. 137) which, at the time of the award, had superseded section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—611) on the basis that the defendants had improperly blocked the 20-foot-wide strip. Such conduct is clearly not covered by either the foregoing rule or statutory provision. The prohibitions of the rule and statute concern improper conduct during litigation. If any contention is made that the award of attorney fees was made for frivolous pleading by defendants, that contention is not supported by the record. The issues presented here by defendants were genuine and complicated. We also note that Supreme Court Rule 137, in force when the fees were awarded, requires

the court to "set forth with specificity the reasons and basis of any sanction" in either the order disposing of other issues or a separate order. (134 Ill. 2d R. 137.) That was not done here. The award of attorney fees cannot stand.

We affirm the judgment of January 2, 1990, deciding the case on the merits. We affirm the award of costs but reverse the portion of the subsequent order granting plaintiffs' attorney fees.

Affirmed in part; reversed in part.

KNECHT, P.J., and LUND, J., concur.